# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Jemarcus Watkins,

$\qquad$ Petitioner,

Case No. 17-cv-12667

v.

Judith E. Levy
United States District Judge

Tony Trierweiler,

Mag. Judge R. Steven Whalen

$\qquad$ Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Jemarcus Watkins, a Michigan prisoner, is serving a term of life imprisonment for conspiracy to commit first-degree murder, and multiple, lengthy terms of imprisonment for fourteen additional felony convictions. He seeks habeas corpus relief under 28 U.S.C. § 2254 on the following grounds: the trial court's evidentiary rulings violated his right to due process; the prosecutor engaged in misconduct; and defense counsel was ineffective for failing to move to admit cell phone evidence,

failing to move to sever his trial from that of his codefendant, and failing to present an expert in eyewitness identification.

Because the Michigan Court of Appeals' decision denying these claims was not contrary to or an unreasonable application of Supreme Court precedent, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and grants Watkins leave to proceed *in forma pauperis* on appeal.

## I.    Background

In 2013, Petitioner was charged in Saginaw County Circuit Court with conspiracy to commit first-degree murder, Mich. Comp. Laws § 750.157a and Mich. Comp. Laws § 750.316(a), first-degree arson, Mich. Comp. Laws § 750.72, conspiracy to commit first-degree arson, Mich. Comp. Laws § 750.157a and Mich. Comp. Laws § 750.72, threatening a witness, Mich. Comp. Laws § 750.122(7)(c), six counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and five counts of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.

In summary, Petitioner and his co-defendant Granderson were charged with setting fire to a house where an individual, Patton, was

located. Before the fire, Patton intended to testify at a separate murder trial arising out of a pre-prom party shooting. Although Patton was not home at the time of the fire, other individuals were present. One of those individuals, Prince, identified Petitioner as one of the perpetrators of the fire. Prince testified at Petitioner's trial that he recognized Petitioner because they had known each other since middle school.

The Michigan Court of Appeals summarized the evidence presented at trial as follows:

> Jeremy Prince testified that he attended middle school and high school with Watkins, codefendant John Henry Granderson,[ ] and Anterio Patton. According to Prince, he attended a pre-prom party in May 2013. During the party, there was a commotion involving Patton. Phillip Hudson, a friend of Patton, testified that Patton and Evillis McGee "had a problem with each other." According to Prince, someone fired 12 or 13 shots into the crowd during the pre-prom party and Ne-Ne McKinley was killed.
>
> Patton's mother testified that she was present at the pre-prom party with Patton. According to Patton's mother, she had just given Patton a hug when "the crowd went to backing up, and I seen some guys with some guns." The men with guns began shooting. Patton's sister testified that she was also at the pre-prom party and saw Watkins, Karon Thomas, and two other men shoot into the crowd.
>
> Saginaw City Police Detective Matthew Gerow testified that he investigated the pre-prom shooting. According to Detective Gerow, McGee and Thomas were charged with murder in

connection with McKinley's death. Detective Gerow testified that Patton testified at McGee and Thomas's preliminary examination. Patton's mother testified that Patton intended to testify at the murder trial on July 26, 2013.

Patton's home was attacked early in the morning on July 11, 2013. According to Prince, a friend dropped him off near Patton's home to meet his ex-girlfriend, who was at Patton's house. Prince saw an unfamiliar van driving in the neighborhood. Patton was not there at the time, but Patton's family and some friends were present. At about 12:30 a.m., a van drove by the house. About three minutes later, he saw someone approach the house with something in one hand. Prince yelled, grabbed his ex-girlfriend, and then heard "the loudest bang I ever heard in my life." Prince realized that he, his ex-girlfriend, and the house were on fire. The people outside began shooting at the house.

Prince extinguished the fire that was on him and then went to retrieve a gun. When he looked outside, he saw that the front of the house was on fire and Granderson was shooting an assault-style rifle at the house. Prince tried to get everyone into the house's basement, but once there, he realized that his ex-girlfriend was not present. Prince went back upstairs to find her and saw someone enter the home carrying a handgun:

> He was like right there on the porch, coming into the door, but I see him, but he's look around like, and I see him.... [W]hen we made eye contact, his eyes got big, because I was shocked about who I seen.

Prince then testified that the person was Watkins, who ran back outside. Prince found his ex-girlfriend and went into the basement to wait for police and firefighters to arrive. Prince

4

believed Granderson and Watkins had set the house on fire and then waited for the occupants to come outside so that they could "pick [them] off." The recording of a 9-1-1 call that was placed from the home's basement from 1:54 a.m. to 2:03 a.m. was admitted into evidence.

\* \* \*

Granderson testified that on the night of the arson, he was at his sister's home in the Sheridan Park neighborhood. Granderson's alibi defense centered on watching the child of his sister's friend, Ja'Quise O'Daniels, while O'Daniels shopped for groceries. On cross-examination, O'Daniels testified that she was mistaken about which day it was that Granderson watched her child.

Lauren Davis, the mother of Watkins's child, testified that at about 2:25 a.m. on July 11, 2013, Watkins asked her to pick him up from a home in northwest Sheridan Park. Davis testified that Watkins did not smell of smoke or gasoline and did not have a weapon when she picked him up. Davis stated that she did not know where Watkins was from 1:45 a.m. to 2:00 a.m.

*People v. Watkins*, No. 320318, 2015 WL 4169204, at \*1–2 (Mich. Ct. App. July 9, 2015).

A jury found Watkins guilty of all charges and, on January 29, 2014, he was sentenced to: life imprisonment for conspiracy to commit murder, 13 to 40 years for conspiracy to commit arson, 37 years, 5 months to 80 years for arson and for each assault conviction, 9-1/2 to 15 years for threatening a witness (to be served consecutive to the other, concurrent sentences), and 2 years imprisonment for each felony-firearm conviction

5

(to be served concurrently with one another and consecutive to the other sentences). *People v. Watkins*, No. 320318, 2015 WL 4169204, at *1 (Mich. Ct. App. July 9, 2015).

Watkins filed an appeal of right in the Michigan Court of Appeals claiming that: the prosecutor improperly shifted the burden of proof; the trial court improperly admitted witness Jeremy Prince's prior consistent statements; he was denied the right to effective assistance of counsel; the trial court erred in denying Watkins' motion for new trial based upon newly-discovered evidence; the trial court erred in admitting gang-related photographs; the cumulative effect of these errors denied Watkins the right to a fair trial; and the trial court incorrectly scored offense variables 5, 10, and 20. *Id.* The Michigan Court of Appeals affirmed Watkins' convictions and sentences. *Id.* at *11. The Michigan Supreme Court denied leave to appeal. *People v. Watkins*, 499 Mich. 935 (Mich. May 25, 2016).

Watkins then filed this habeas corpus petition. (ECF No. 1.) He raises these claims: (1) his right to due process was violated when the trial court admitted the prior consistent statement of Jeremey Prince and gang-related photographs; (2) the prosecutor committed misconduct by

6

shifting the burden of proof during closing argument; and (3) trial counsel was ineffective for failing to admit cell phone evidence, failing to move to sever Watkins' trial from co-defendant Granderson's, and failing to present an expert in eyewitness identification.

## II.  Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court

decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A.  Admission of Evidence

Watkins raises two claims related to the admission of evidence. He argues that the trial court violated his right to due process by admitting testimony concerning Jeremy Prince's prior consistent statement and admitting gang-related photographs.

Respondent argues that these claims are unexhausted because Petitioner failed to present them as federal constitutional claims and that they are procedurally defaulted because defense counsel failed to object

and invited the error. The exhaustion requirement is not jurisdictional, and the Court may decide an unexhausted claim where, as here, the unexhausted claim is lacks merit. *See Granberry v. Greer*, 481 U.S. 129, 131, 134-35 (1987). Further, judicial economy is best served if the Court bypasses the procedural default question and proceeds directly to the merits of these claims. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel [addressing the merits of a claim] if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

First, Watkins challenges the admission of police detective Charles Coleman's testimony recounting his interview with Prince at the hospital approximately 45 minutes after the shooting. Watkins argues that the testimony improperly bolstered Prince's credibility.

The Michigan Court of Appeals denied this claim:

We note that counsel for Granderson challenged Detective Coleman's testimony. Counsel for Watkins did not challenge the testimony. In his opening statement, counsel for Granderson had previously stated the following:

Mr. Prince has been interviewed a number of times and he said a number of different things. At one point he told the investigator he was 70 percent sure ... that the two people shooting at the house,

and again earlier he had said there were three, 70 percent sure it was John Granderson and Mr. Watkins.

There have been other hearings in this case, you know. There was a preliminary exam before we got to that point, and at that point he's saying he was 100 percent sure, but back when Mr. Prince was being treated at Covenant Hospital, so this would have been the night of the shooting, July 11th, he told Detective Coleman that [Watkins] was the one doing the shooting and he did not know who threw the cocktail.

As part of his interview with Detective Coleman, he related that he had been shot a year ago in Buena Vista and believed he'd been shot by the same people who shot up the house this particular night.

Detective Coleman subsequently testified that he was the first officer to interview Prince in the hospital. According to Detective Coleman, Prince told him that Watkins and Granderson got out of a van, Watkins was shooting, and he did not know who threw the Molotov cocktail. On cross-examination, Detective Coleman testified that Prince told him that the arson incident was the second time that Watkins and Granderson had shot him.

We conclude that by stating in his opening that Detective Coleman would testify about Prince's prior statements, counsel waived this alleged error. Prior to his objection, counsel indicated in his opening statement that the jury would hear Prince's prior statements to police officers. The prosecution clearly relied on this statement while questioning Detective

Coleman. Watkins's attempt to characterize the prosecution's questioning as "bolstering" on appeal is disingenuous.

*People v. Watkins*, No. 320318, 2015 WL 4169204, at *4–5 (Mich. Ct. App. July 9, 2015).

The Michigan Court of Appeals correctly stated at the beginning of its analysis that co-defendant Granderson's attorney referenced Prince's prior statement in his opening statement. But by the end of its analysis the court of appeals mistakenly determined that Watkins waived this claim because his attorney referenced Prince's statement in opening. In fact, Watkins' attorney did not give an opening statement – he reserved his opening at the beginning of the trial and, at the start of the defense's case, entirely waived an opening statement. (ECF No. 4-5, PageID.234; ECF No. 4-9, PageID.631.) Where, as here, a state-court decision is based upon an unreasonable determination of the facts, the Court reviews the claim *de novo. Walter v. Kelly*, 653 F. App'x 378, 391 (6th Cir. 2016). Even under a *de novo* standard of review, the Court denies relief.

Habeas relief is seldom available for a state court's erroneous evidentiary ruling because habeas relief "does not lie for errors of state law." *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for

11

habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

The Court finds that admission of this testimony did not violate due process. First, Prince testified at trial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). The Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*

Second, even if the admission of the prior consistent statement violated state evidentiary rules, habeas relief is not warranted. On

habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68 (citing § 2241). There is no Supreme Court decision holding that improper use of a witness's prior consistent statements violates the Constitution. *See Wilson v. Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017).

Finally, this testimony was so limited in nature it does not come close to implicating Watkins' right to due process. Therefore, admission of the prior statement did not deprive Watkins of a fundamentally fair trial.

Watkins' second evidentiary claim concerns the admission of gang-related photographs. He argues that the admission of "hundreds" of gang-related photographs depicting Watkins and his co-defendant flashing gang signs and holding weapons violated his right to due process.[1] (ECF No. 1-1, PageID.20.)

---

[1] Watkins' reference to hundreds of gang-related photographs is overstated. The trial court admitted approximately 130 photographs as exhibits, but many were related to the scene of the fire and Prince's injuries. Of those photographs depicting gang-related content, many related only to co-defendant Granderson.

The Michigan Court of Appeals held that the photographs were properly admitted under state rules of evidence. *Watkins*, 2015 WL 4169204 at *3. The state court held:

> [T]he photographs established Watkins's relationship to people who were going to be standing trial for murder two weeks after the offense. The intended victim of the arson was a person who intended to testify at that trial. The photographs therefore established the motive for the crime and were thus highly relevant. The gang-related hand symbols that some people in the photographs displayed also established their relationship. There is also no indication that the jury gave this evidence undue or preemptive weight. We conclude that the trial court did not abuse its discretion by admitting the photographs.

*Id.*

The court of appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Admission of the gang-related photographs did not render Watkins' trial fundamentally unfair because such evidence was relevant to motive. "The Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012) (emphasis original) (no habeas relief where evidence of gang membership relevant

14

to witness bias and criminal motive). Here, the connections among the defendants and others depicted in the photographs related to motive. As such, their admission did not render Watkins' trial fundamentally unfair.

## B.   Prosecutorial Misconduct

Next, Watkins argues that the prosecutor denied him a fair trial by improperly shifting the burden of proof during closing argument.[2] The prosecutor argued:

> [Watkins'] girlfriend Lauren said ... it's like early in the morning, 2:24, 2:25, ... and I get a call from [Watkins] and he's someplace where I don't even know where he's at....

> He wasn't at home. He was at some stranger's house apparently. What's he doing at some stranger's house, and why does he need a ride at almost 2:30 in the morning.... Lauren, to her credit, well, you don't know where he was at the time when all this happened, do you? Can't tell you. Does not have an alibi.

*Watkins*, 2015 WL 4169204, at *6.

Because defense counsel failed to lodge a contemporaneous objection during trial, the Michigan Court of Appeals reviewed this prosecutorial misconduct claim under a plain-error standard. *Id*. AEDPA's deferential standard of review applies to a state court's plain-

---

[2] Respondent argues that this claim is procedurally defaulted. The Court finds it more efficient to proceed directly to the merits of the claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

error analysis of a defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Under *Darden v. Wainwright,* 477 U.S. 168 (1986), a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted). "That leeway increases in assessing a state court's ruling under AEDPA," as this court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in

a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

The Michigan Court of Appeals held that the prosecutor's comment on Watkins' failure to present an alibi was improper because Watkins did not present an alibi defense. *Watkins*, 2015 WL 4169204 at *6. But the court of appeals held that the error did not warrant reversal because it was harmless:

> [T]he prosecution's remark was brief. Read in context, it was a part of the prosecutor's general commentary on the weakness of Davis's evidence that Watkins was somewhere other than Patton's house during the arson. Most importantly, a timely curative instruction would have alleviated the prejudicial effect of this remark, and the trial court later instructed the jury that the burden of proof rested on the prosecution and that Watkins was not required to prove his innocence. We conclude that this error does not warrant reversal because it is not likely that it prejudiced Watkins's trial.

*Id*.

The Court applies AEDPA's deferential standard of review to a state court's harmless error analysis and, under this standard, habeas relief is not warranted. *See Davis v. Ayala*, 576 U.S. 257, 268-99 (2015).

The trial court correctly instructed the jury that the prosecutor had the burden of proving Watkins' guilt beyond a reasonable doubt and the comment was isolated. (ECF No. 4-1, PageID.735.) Under these circumstances, it was not unreasonable for the Michigan Court of Appeals to conclude that any possible prejudice that may have resulted from the prosecutor's single, isolated statement was cured by the trial court's instructions. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002) (denying habeas relief and concluding that even if prosecutor committed misconduct during closing argument, it was not an error that "jury instructions could not cure."). Relief is denied on this claim.

## C.    Ineffective Assistance of Counsel

In his final claim, Watkins argues that defense counsel was ineffective in the following ways: (1) counsel failed to move to present evidence of Watkins' cell phone records for June 11, 2013; (2) counsel failed to move to sever his trial from co-defendant Granderson's; and (3) counsel failed to present an expert witness in eyewitness identification.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014), *quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's

actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 1. Cell phone records

Watkins argues that defense counsel should have admitted a police report showing that "Watkins' cell phone could not be placed at the scene at the time of the incident." (ECF No. 1-1, PageID.26.) The police report stated:

> Due to the lack of calls nearer to the time of the incident, there is no definitive cellular phone call evidence to place the handset at or away from the scene of the crime. Analysis of other date transmissions records does not place the phone at the scene of the crime.

(ECF No. 4-15, PageID.896.) [3]

The Michigan Court of Appeals held that defense counsel was not ineffective for failing to present this evidence because it was not exculpatory: "[A]t best, the witness could have testified that he could not tell from the cell phone records where Watkins was located during the crime." *Watkins*, 2015 WL 4169204 at *7. The state court's decision was

---

[3] A copy of the police report has not been filed with this Court. Watkins quoted the relevant portion of the police report in his brief filed in the Michigan Court of Appeals. The content of the police report is not disputed so the Court relies on the quoted portion found in Watkins' state court brief.

not contrary to, or an unreasonable application of, *Strickland*. Counsel's decision not to present this evidence was reasonable given that it would not have yielded any measurable benefit to the defense.

### 2.  Separate trials

Watkins next argues that his attorney was ineffective in failing to move to sever his trial from that of his co-defendant. The Michigan Court of Appeals held that counsel's decision not to move for separate trials was not an unreasonable trial strategy and did not prejudice Watkins. The state court reasoned:

> Watkins and Granderson did not present mutually antagonistic defenses: Watkins's theory was that he was misidentified as being present, and Granderson's theory was that he was not present. A full reading of Granderson's opening statement indicates that he did not inculpate Watkins. Instead, he accurately summarized the expected testimony in the case. Neither defense implicated the other defendant.

> Watkins contends that Granderson's failed alibi defense may have prejudiced the jurors against his case because Granderson blatantly lied to the jury. Granderson's alibi witness testified that she was mistaken, not that the alibi was fabricated. Watkins also contends that the jury was prejudicially exposed to gang-related photographs involving Granderson that would otherwise have been inadmissible. Watkins does not address how the photographs of Granderson with East Side gang members were more prejudicial to his case than the photographs of Watkins with similar associates, which were properly

> admitted. "[I]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice." [*People v. Hana*, 447 Mich. 325, 349 (1994)] (internal quotation marks and citations omitted). We are not convinced that the jury gave undue or preemptive weight to the photographs involving Granderson alone, rather than those involving Watkins.

*Watkins*, 2015 WL 4169204 at *7-8.

The state court's decision is consistent with controlling federal law. On habeas review of an improper joinder claim, the Court must ask whether the failure to sever the trials impinged on the petitioner's right to due process of law. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To prove a due process violation, Watkins must show that the joint trial "'result[ed] in prejudice so great as to deny [Watkins his] . . . right to a fair trial.'" *Id.* (*quoting United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).

Generally, severance is granted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 442, 458-59 (6th Cir. 2001) (*quoting Zafiro v. United States*, 506 U.S. 534, 539 (1993)). A separate trial is not required simply because defendants present

antagonistic defenses. *Id.* at 458. "A defendant seeking severance must show substantial, undue, or compelling prejudice to a specific trial right." *Lang v. Gundy*, 399 Fed. App'x 969, 976 (6th Cir. 2010). "To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses ... or the right to confrontation ..., [the court] must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged." *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979). This is a "very heavy burden." *Stanford,* 266 F.3d at 459.

Watkins fails to satisfy this burden. The Michigan Court of Appeals found no evidence which would merit severance making it unlikely that a motion for severance would have succeeded. Counsel is not required to raise meritless arguments. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). And Watkins has failed to rebut the presumption that counsel's decision was a matter of trial strategy. Federal habeas courts do not second-guess judgments of that sort. *See Strickland*, 466 U.S. at 689 (cautioning that "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (citation omitted). The state court's determination that failing to move for a severance did not constitute ineffective assistance of counsel was therefore not an unreasonable application of federal law.

### 3. Expert witness

Finally, Watkins argues that counsel was ineffective in failing to present an expert witness in eyewitness identification.

The Michigan Court of Appeals denied this claim:

> [W]hat evidence to present is a matter of trial strategy. [*People v. Horn*, 279 Mich. App. 31, 39 (2008)]. Trial counsel may reasonably decide against presenting an expert witness in identification because counsel "may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate." *People v. Cooper*, 236 Mich. App 643, 658; 601 NW2d 409 (1999).

> We conclude that trial counsel did not render ineffective assistance when he did not present an eyewitness identification expert. This case involved only one eyewitness-Prince, who claimed that he saw Watkins while he attempted to retrieve his

girlfriend. Prince was familiar with Watkins, and they had an extensive personal history. Trial counsel ably attacked Prince's testimony both by cross-examination and the presentation of other witnesses, including through Davis's testimony that Prince never went back upstairs but instead remained in the basement. Considering the abundant impeachment evidence available, counsel's strategic decision to forego an eyewitness identification expert was reasonable. Further, we are not convinced that the results of Watkins's proceeding would have been different had such an expert testified.

*Watkins*, 2015 WL 4169204, at *8.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Supreme Court has recognized that eyewitness identification carries certain dangers such as unreliable memory or perception. *United States v. Wade*, 388 U.S. 218, 235 (1967). And the Sixth Circuit has acknowledged that expert testimony on eyewitness identification is "'universally recognized as scientifically valid and of aid to the trier of fact." *Jackson v. Bradshaw*, 681 F.3d 753, 762 (6th Cir. 2012) (quoting *Ferensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007)). Yet "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*,

571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690). In *Jackson*, the Sixth Circuit held that a trial attorney's decision not to present expert testimony on eyewitness identification was not unreasonable where potential weaknesses in the eyewitnesses' identification were demonstrated through cross-examination and closing arguments. *Jackson*, 681 F.3d at 762-63. "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

In this case, defense counsel challenged eyewitness testimony through cross-examination. An expert was not needed to explain to the jury that conditions such as smoke and fire may make it harder to see and, consequently, potentially render an identification less reliable. Further, Watkins presents no evidence that he has an expert witness who would have been willing to testify regarding eyewitness identification. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). In the absence of such proof, Watkins

is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial. *Id.* at 557 (6th Cir. 2007) (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been").

Applying AEDPA's doubly deferential standard of review, it was not unreasonable for the Michigan Court of Appeals to conclude that counsel's decision to rely on cross-examination rather than retaining an expert was within the wide range of reasonable defense strategies and that Watkins was not prejudiced by defense counsel's decision. The Court denies relief.

## V.    Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Watkins' claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

The Court grants Watkins leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## VI.   Conclusion

For the reasons set forth above, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: July 20, 2020           s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 20, 2020.

                               s/William Barkholz
                               WILLIAM BARKHOLZ
                               Case Manager